**Stephen John WEST, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 65A04–0309–CR–435.

Court of Appeals of Indiana.

April 8, 2004.

~312

William W. Gooden, Mt.Vernon, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Daniel Jason Kopp, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Stephen John West appeals his conviction for Illegal Possession of Anhydrous Ammonia or Ammonia Solution. In particular, he argues that during his bench trial the trial court improperly admitted evidence regarding the use of a scientific test without first establishing the test's reliability. Additionally, West claims that the evidence is insufficient to support his conviction. We agree that the test results were improperly admitted. However, because we find that the evidence is sufficient to support West's conviction even without considering the improperly admitted test results, we find this error to be harmless and affirm.

### Facts and Procedural History

At approximately 2:00 a.m. on February 14, 2003, Posey County Sheriff's Deputy Thomas Latham observed a speeding pickup truck that did not have its license plate illuminated as required by law. Deputy Latham stopped the truck, which was being driven by Joni Mattingly and in which West was the sole passenger. Mattingly informed Deputy Latham that her registration was in the bed of the truck and asked West to retrieve it for her. As West was searching the truck's bed for the registration, Deputy Latham observed a two-liter Mountain Dew bottle with a garden hose attached to it with black electrical tape. From previous experience, Deputy Latham knew that this type of makeshift device was used in stealing anhydrous am-

monia, which is a precursor in the manufacture of methamphetamine. Deputy Latham also observed a fire extinguisher on the ground approximately five feet from the passenger side of the pickup truck. Because of his involvement with theft of anhydrous ammonia investigations in the past, Deputy Latham knew that fire extinguishers are often used to transport stolen anhydrous ammonia. When Deputy Latham asked West about the fire extinguisher, West replied that he did not know what was in it or from where it came. The video-recording system in Deputy Latham's patrol car, however, had captured West throwing the fire extinguisher out the passenger-side window. When Deputy Latham discharged the fire extinguisher, it emitted a fog "similar to what that of anhydrous ammonia would be if it reacted to the atmosphere. [He] then picked the nozzle up and brought it close to [his] face and smelled the odor of what [he] would recognize as anhydrous ammonia." Tr. p. 11. Additionally, a can of starting fluid was found on the seat in the cab of the truck.

Based on these initial observations, Deputy Latham called Deputy Jimmie Reeves of the Posey County Narcotics Unit to the scene to perform a Draeger test on the contents of the fire extinguisher.[1] The fire extinguisher tested positive for the presence of anhydrous ammonia. After determining that the fire extinguisher contained anhydrous ammonia, Deputy Reeves disposed of the fire extinguisher by shooting it. When Deputy Reeves shot the fire extinguisher, a white cloud appeared above it, which was consistent with what had happened in the past when Deputy Reeves disposed of canisters that he knew contained anhydrous ammonia.

The State charged West with Count I, Illegal Possession of Anhydrous Ammonia or Ammonia Solution as a Class D felony;[2] and Count II, Storage or Transportation of Anhydrous Ammonia Illegally as a Class A misdemeanor.[3] West waived his right to a trial by jury. At West's bench trial, Deputy Reeves testified regarding the Draeger test he performed. West objected, questioning the reliability of the Draeger test. The trial court reserved ruling on the objection. Throughout the course of his testimony, Deputy Reeves provided a basic overview of how the Draeger test works and the training he received concerning the use of the test. He did not offer any testimony regarding whether the Draeger test has been or can be empirically assessed; whether the Draeger test has been subjected to peer review and publication; the known or potential rate of error; the existence and maintenance of standards controlling the test's operation; or its general acceptance within the relevant scientific community. Deputy Reeves did

---

1. Draeger is the manufacturer of the brand of the gas detection kit utilized by the Posey County Sheriff's Department in this case. The Draeger test is used to detect the presence of certain chemicals, including anhydrous ammonia. To conduct the test, the following four steps should be followed:
 1. Select the appropriate Draeger Tube for chemical hazard and expected concentration.
 2. Open tube and insert in pump.
 3. Pull sample through tube.
 4. Read concentration directly from the color band on the scale.

If the designated air contaminant is present, it reacts with the chemical reagent in the tube, producing a color change. See http://www.af-cintl.com/tubemain.htm (last visited Mar. 11, 2004). See also Draeger–Tubes® and accuro® Pump Brochure, available at http://www.draeger.com/ST/internet/pdf/US/detection/brochure_tubes_e.pdf.

2. Ind.Code § 35–48–4–14.5(c)

3. Ind.Code § 22–11–20–6(b).

testify, however, that the Drug Enforcement Agency ("DEA") utilizes the Draeger test and, in fact, had trained him on how to use the Draeger testing system. Deputy Reeves also reported that an environmental clean-up agency provided him with training as well and that the agency uses the Draeger test to identify potential chemical hazards. Following the submission of post-trial briefs, the trial court convicted West of illegal possession of anhydrous ammonia or ammonia solution. This appeal ensued.

### Discussion and Decision

West raises two issues on appeal. First, he claims that the trial court erred by admitting evidence of a scientific test without first establishing its reliability. Second, he alleges that the evidence is insufficient to support his conviction. We address each issue in turn.

### I. Admission of Draeger Test Results

■ West asserts that the trial court erred by admitting the Draeger test results because the State failed to establish the test's reliability. Initially, we note that we review the trial court's decision to admit evidence based on a scientific process under an abuse of discretion standard. *Troxell v. State*, 778 N.E.2d 811, 815 (Ind. 2002). In determining whether scientific evidence is reliable, the trial court must determine whether such evidence appears sufficiently valid—or, in other words, trustworthy—to assist the trier of fact. *Ford Motor Co. v. Ammerman*, 705 N.E.2d 539, 551 (Ind.Ct.App.1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 n. 9, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)), *trans. denied.* In so doing, the trial court "must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

■ Though not presuming to set out a definitive checklist or test regarding factors that bear on the reliability inquiry, the *Daubert* court outlined five key considerations: (1) whether the theory or technique at issue can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted within the relevant scientific community. *Id.* Although these considerations are useful, our supreme court has opined, "there is no specific 'test' or set of 'prongs' which must be considered in order to satisfy Indiana Evidence Rule 702(b)." *McGrew v. State*, 682 N.E.2d 1289, 1292 (Ind.1997). Rather, reliability may be established by judicial notice or by sufficient foundation to convince the trial court that the relevant scientific principles are reliable. *Ammerman*, 705 N.E.2d at 551. When laying a sufficient foundation, the focus must be on the principles and methodology behind the science rather than the conclusions generated. *Id.*

Based on our review of the record, we are not convinced that the State met its burden of establishing the reliability of the Draeger test. First, we note that the trial court did not take judicial notice of the Draeger test, and could not have, as the reliability of the Draeger test has not been established under Indiana law. In the absence of judicial notice, the State must establish a sufficient foundation to convince the trial court that the relevant scientific principles are reliable. *See McGrew*, 673 N.E.2d at 798. The only information elicited from Deputy Reeves regarding the test concerned his training by an environmental clean-up agency and the DEA and general information about how he performed the test. While we

have previously opined that the *Daubert* factors are not controlling, we have recognized their utility in deciding whether scientific evidence is reliable as required by Indiana Evidence Rule 702(b). *See id.* Due to the dearth of evidence regarding (1) the testing of the Draeger test; (2) whether the Draeger test has been subjected to peer review and publication; (3) the known or potential error rate of the Draeger test; (4) the existence and maintenance of standards controlling the Draeger test's operation; and (5) its general acceptance in the relevant scientific community, we find that the trial court erred by considering the Draeger test results. Because the contents of the fire extinguisher were identified as anhydrous ammonia by means other than just the Draeger test, as explained below, we deem this error to be harmless.

## II. Sufficiency of the Evidence

West next challenges the sufficiency of the evidence in support of his conviction. To convict a person of illegal possession of anhydrous ammonia or ammonia solution as a Class D felony, the State must prove that the person possessed either anhydrous ammonia or ammonia solution and had the intent to manufacture methamphetamine. I.C. § 35–48–4–14.5(c). In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *Iddings v. State,* 772 N.E.2d 1006, 1015 (Ind. Ct.App.2002), *trans. denied.* We look to the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

## A. Possession of Anhydrous Ammonia

■ West first attacks the sufficiency of the evidence in support of his possession of anhydrous ammonia or ammonia solution. In particular, West contends that without the Draeger test results, the evidence is insufficient to prove that the contents of the container were anhydrous ammonia. Additionally, he claims that the State failed to prove that West possessed anhydrous ammonia in its liquid form. We disagree.

West directs our attention to *Livermore v. State,* 777 N.E.2d 1154 (Ind.Ct.App. 2002), to bolster his contention that the evidence in support of his conviction is insufficient. *Livermore,* however, is readily distinguishable. Livermore was convicted of possession of precursors, and we reversed. We reached this decision because the State failed to proffer any evidence that Livermore actually possessed ether. Instead, the State merely presented testimony that the arresting officers smelled ether and recovered four empty cans of starting fluid, which contains ether. Consequently, we found the evidence to be insufficient to support Livermore's conviction.

Conversely, here the deputies recovered a fire extinguisher that was not empty but instead contained what was determined to be anhydrous ammonia. Drawing on his experience with the investigation of methamphetamine labs, Deputy Latham identified the substance in the fire extinguisher as anhydrous ammonia based on its distinctive smell and reaction with the atmosphere when he partially discharged the fire extinguisher. *See Kenner v. State,* 703 N.E.2d 1122, 1126 (Ind.Ct.App.1999) (recognizing the ability of trained or experienced law enforcement personnel to detect distinctive odors such as marijuana). Deputy Latham's conclusion was made independent of and prior to the performance of the Draeger test. Deputy Latham also recovered a makeshift funnel from the bed of the truck, which he identified as the

type of instrument that is used to steal anhydrous ammonia.

Additionally, contrary to West's claim that there was no testimony to allow the trier of fact to conclude that he possessed anything more than anhydrous ammonia vapors, Deputy Reeves explained that anhydrous ammonia is a liquid that vaporizes when exposed to air. Deputy Reeves further indicated that on numerous occasions he had seen individuals use fire extinguishers for the illegal storage and transport of anhydrous ammonia. Deputy Reeves also testified that when he went to dispose of the fire extinguisher by shooting the canister, a white cloud formed, which was consistent with others he had seen when he disposed of anhydrous ammonia in a like manner. Although Deputy Reeves did not observe any liquid spew out when he shot the fire extinguisher, it is reasonable to infer that the fire extinguisher contained liquid anhydrous ammonia and not just vapors as West invites us to believe. This inference is based on the cloud that formed over the canister after Deputy Reeves shot it. Had there been no liquid anhydrous ammonia inside the fire extinguisher, no cloud would have formed. We therefore reject West's attack on his conviction on this ground. Based on the deputies' testimony, we conclude that the State sustained its burden of proving that West

possessed anhydrous ammonia in its liquid form.[4]

## B. Intent to Manufacture Methamphetamine

 West also argues that the State failed to prove that he intended to manufacture methamphetamine. Intent is a mental function. *Lush v. State,* 783 N.E.2d 1191, 1196 (Ind.Ct.App.2003), *trans. denied.* Absent an admission by the defendant, intent must be determined from a consideration of the defendant's conduct and the natural and usual consequences thereof. *Id.* The trier of fact must resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences of what might be expected from that conduct, a showing or inference of the intent to commit that conduct exists. *Id.*

As Deputy Latham approached the driver of the pickup truck he had just stopped, West threw the fire extinguisher out the passenger side of the vehicle. When Deputy Latham recovered the fire extinguisher from the side of the road, West denied having any knowledge of what it was or from where it came. The video-recording system in Deputy Latham's patrol car, however, had captured West in the act as he attempted to dispose of the fire extin-

4. Moreover, we note that the deputies' observations are admissible as lay testimony by skilled witnesses because the subject matter of their testimony is not a matter of "scientific principles" governed by Indiana Evidence Rule 702(b); rather, it is a matter of the observations of persons with specialized knowledge. *See Cansler v. Mills,* 765 N.E.2d 698, 703 (Ind.Ct.App.2002), *trans. denied; see also* Ind. Evidence Rule 701. As skilled witnesses, the deputies are permitted not only to testify about their observations, but also testify as to opinions or inferences that are based solely on facts within their own personal knowledge. *See Cansler,* 765 N.E.2d at 703; *see also* 13 Robert Lowell Miller, Jr., *Indiana*

*Practice* § 701.105 at 319–20 (2d 1995). In order to be admissible under Evidence Rule 701, opinion testimony of a skilled witness or lay observer must be "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Evid. R. 701. Because the deputies' testimony regarding their observations is rationally based on their perception and is determinative of a fact in issue—namely, whether West possessed anhydrous ammonia—we find this testimony is admissible as lay testimony by skilled witnesses under Indiana Evidence Rule 701.

guisher. The fire extinguisher contained anhydrous ammonia. Anhydrous ammonia is basically used for two things: fertilizing farm operations and manufacturing methamphetamine. A can of starting fluid, another precursor in the manufacture of methamphetamine, was also recovered from the truck. These two precursors, combined with West's guilty knowledge as displayed through his attempt to conceal the fire extinguisher containing anhydrous ammonia and his outright denial of any knowledge of the fire extinguisher even though he had just thrown it out the truck's window, are sufficient to establish that West intended to manufacture methamphetamine.

Because we find that there is probative evidence from which a reasonable trier of fact could have found that West possessed anhydrous ammonia with an intent to manufacture methamphetamine, we affirm.

Affirmed.

SHARPNACK, J., and MATHIAS, J., concur.