The STATE of Ohio, Appellee,

v.

GRAGG, Appellant.

[Cite as *State v. Gragg*, 173 Ohio App.3d 270, 2007-Ohio-4731.]

Court of Appeals of Ohio,
Twelfth District, Fayette County.

No. CA2006–09–038.

Decided Sept. 17, 2007.

David B. Bender, Fayette County Prosecuting Attorney, and Kristina M. Rooker, Assistant Prosecuting Attorney, for appellee.

Jeffrey A. McCormick, for appellant.

Young, Presiding Judge.

{¶ 1} Defendant-appellant, Ronald Gragg, appeals his conviction in the Fayette County Court of Common Pleas for complicity in the illegal possession of chemicals for the manufacture of drugs, complicity to theft, and breaking and entering.

{¶ 2} Appellant was indicted in March 2006 on one count each of illegal possession of chemicals for the manufacture of drugs, theft, and breaking and entering. The charges stemmed from allegations that in the early hours of March 11, 2006, appellant, Wilma Howland, and Bryan Cook entered the property of Rodney Miller in Washington Court House, Ohio, without his permission and stole anhydrous ammonia from his storage tanks. Anhydrous ammonia is a precursor in the manufacture of methamphetamine. Bryan Cook entered a guilty plea; appellant and Wilma Howland pleaded not guilty and were jointly tried before a jury.

{¶ 3} At trial, the state presented the testimony of Rodney Miller, the owner of the stolen anhydrous ammonia, and three deputy sheriffs. Miller was awakened in the early hours of March 11, 2006, to the sound of a car (a Jeep) on his property. Miller stores anhydrous ammonia on his property to use as a fertilizer and has had problems in the past with people stealing the substance. Miller testified that the Jeep sped by the driveway in front of his house and drove directly to the storage tanks located 400 to 500 feet behind his house. Miller called the Fayette County Sheriff's Office to report the theft, then followed the Jeep after it left his property. Miller followed the car and stayed in contact with the sheriff's office until Sergeant James Spears of the Fayette County Sheriff's Office caught up with it and pulled the Jeep over.

{¶ 4} Sergeant Spears testified that upon catching up with and passing Miller, he followed the Jeep for a short distance before activating his overhead lights. The Jeep did not pull over and continued driving at a slow rate of speed. The Jeep eventually stopped after Sergeant Spears activated his siren. By then, they were no longer in Fayette County but in Ross County. Wilma was in the driver's

seat, appellant was in the front passenger seat, and Bryan was in the rear passenger seat. "Immediately upon approaching" the car's driver's side, Sergeant Spears "detected an extremely strong odor of ammonia. So strong in fact it gave [him] a headache almost immediately." The smell, which was coming from inside the car, was "extremely intense." Upon being identified, appellant, Wilma, and Bryan were placed in separate police cruisers. By then, Ross County Deputy Sheriff Christopher Clark was at the scene. Because of his training and experience, Deputy Clark is very familiar with anhydrous ammonia.

{¶ 5} At the scene, Deputy Clark recognized Bryan from a previous arrest for stealing anhydrous ammonia. In fact, Bryan had stolen the same substance from the Miller property before. Deputy Clark stuck his head inside the Jeep and detected the smell of anhydrous ammonia. Sergeant Spears and Deputy Clark then walked around the Jeep, and as they approached the passenger's side, they again detected a strong odor of ammonia. The smell was stronger outside the car than it was inside. Searching the area with flashlights, the two officers discovered a glass pickle jar in the ditch that was frosted over with a white vapor coming out of it. Sergeant Spears testified that the jar was located outside the front passenger door; Deputy Clark testified that the jar was located "probably about middle ways" between the front and the rear passenger doors. At that point, Lieutenant Kevin Pierce, a lab-certified methamphetamine technician with the Ross County Sheriff's Office, was called to the scene to test the chemicals in the jar. The jar's contents tested positive for anhydrous ammonia.

{¶ 6} An inventory search of the Jeep yielded funnels, a pair of gloves, a few cans of starter fluid, an air compressor, and some tools. Deputy Clark testified that anhydrous ammonia, starter fluid, and funnels can be used to manufacture methamphetamine. Deputy Clark also testified that though people can use starter fluid for their vehicles, cans of starter fluid with puncture holes are 100 percent used to manufacture methamphetamine. The cans of starter fluid recovered in the Jeep had puncture holes.

{¶ 7} At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29. The trial court denied the motion. Appellant, Wilma, and Bryan then each testified as to the events leading up to their arrest. Appellant met up with Wilma in the evening of March 10, 2006, for a drink. They rode around in Wilma's car for an unspecified period of time, during which they drank two cases of beer. Appellant drank most of it. At about 11 p.m., they went to Bryan's house. A few hours later, Bryan asked for a ride. By then, it was in the early morning hours of March 11, 2006, a Saturday. According to appellant, Bryan needed to go to his grandparents' house to get money for his children's breakfast before they went to school. According to Wilma, Bryan needed to go to his grandfather's house to get money for food. Bryan testified

that he asked for a ride to his grandmother's to get money to buy beer. He further testified that his children were not at his house that morning.

{¶ 8} Appellant, Wilma, and Bryan left in Wilma's car. As they drove, Bryan gave Wilma directions, which took them to the Miller property. Appellant did not know where they drove and did not remember driving to the Miller property, as he had been "heavily intoxicated" and "fad[ing] in and out the rest of the night." According to appellant, the next thing he remembered was Sergeant Spears's cruiser following them. Appellant was worried about his beer consumption, as he had just gotten out of jail. Appellant also remembered the smell of anhydrous ammonia as they were driving. Although appellant never saw the jar, he surmised that he noticed the smell because Bryan had opened the jar: "I mean it just makes your eyes water and takes your breath." Appellant further remembered Bryan telling Wilma that he had stepped on a Windex bottle in her car as a way to explain the smell and Wilma ordering Bryan to throw it out. Wilma's testimony regarding the Windex bottle mirrored appellant's. Bryan denied telling them that he had stepped on a Windex bottle.

{¶ 9} Asked whether the Jeep was the car that Wilma usually drove, appellant volunteered to explain the presence of the funnels and starter fluid in the car. Appellant explained that the items were not to manufacture methamphetamine but to handle the Jeep's mechanical problems. Appellant denied seeing puncture holes in the cans of starter fluid. Appellant also denied (1) that anybody talked about stealing anything that night, (2) that he knew they were going to steal anhydrous ammonia; had he known, Bryan would not have been in the car, or (3) that he used or manufactured methamphetamine.

{¶ 10} Wilma denied (1) knowing they were going to steal anhydrous ammonia, (2) knowing what Bryan was doing when he was out of the car at the Miller property, (3) using or manufacturing methamphetamine, or (4) handling anhydrous ammonia, including in the car. Shortly after Bryan got back into the car, Wilma smelled something that took her breath away. Wilma denied knowing what the smell was. Then, upon noticing Sergeant Spears's cruiser behind her car, she became worried about her tail light and her beer consumption. Bryan told her the officer was not after her. Contrary to Bryan's testimony, Wilma denied being told by Bryan that he needed to throw something out before they could stop. Finally, Wilma explained that she had put the funnels, cans of starter fluid, and the air compressor in her car to handle the Jeep's mechanical problems. The gloves were her husband's. Wilma denied seeing puncture holes in the cans of starter fluid.

{¶ 11} Bryan testified that he had stolen anhydrous ammonia from the Miller property, which he put in a glass jar. Bryan admitted bringing the jar with him, but denied bringing anything else. Bryan testified that appellant and Wilma did

not know that he had brought a jar or that he was going to steal anhydrous ammonia. However, his testimony indicates that his girlfriend knew of his plan before he left his house with appellant and Wilma.

{¶ 12} Once he was back in the car, Bryan was unable to control the "very volatile" anhydrous ammonia while directing Wilma at the same time. As a result, he asked appellant to show her the way back home. Once it started smelling in the car, he and Wilma rolled their windows down. There were otherwise no reactions from either appellant or Wilma. Bryan testified that he was holding the jar outside of his window in his bare hand, yet the jar neither burned his hands nor broke. Once Sergeant Spears was behind them, Bryan told Wilma that he had anhydrous ammonia with him and that she could not stop until he could throw it out of the window. As soon as he threw the jar out of the window, he told her to stop. Bryan surmised that between the time he told her to stop and the time the car actually stopped, they traveled 20 to 30 feet. Yet the jar was found next to the car and next to the passenger doors. Bryan denied that he was going to use the anhydrous ammonia to manufacture methamphetamine. Rather, once at home, he was going to drive to another town and sell it to a friend.

{¶ 13} At the close of appellant's and Wilma's respective cases, the state moved the trial court to amend their indictments to conform to the evidence. Over the objections of both defense attorneys, the trial court granted the state's motion. Appellant's charges of theft and illegal possession of chemicals were amended to complicity on both counts (Wilma's indictment was similarly amended). On August 22, 2006, appellant was found guilty of complicity to illegal possession of chemicals for the manufacture of drugs, complicity to theft, and breaking and entering. He was sentenced to five years in prison. On appeal, appellant raises four assignments of error.

{¶ 14} Assignment of Error No. 1:

{¶ 15} "The state failed to present sufficient evidence to sustain appellant's convictions for complicity to illegal possession of chemicals for the manufacture of drugs and for complicity to theft."

{¶ 16} In reviewing a claim of insufficient evidence, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 70, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. A reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury. See *State v. Benge* (1996), 75 Ohio St.3d 136, 661 N.E.2d 1019.

{¶ 17} In the case at bar, appellant's convictions were based mostly on circumstantial evidence. However, both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence. *State v. Crutchfield*, Warren App. No. CA2005–11–121, 2006-Ohio-6549, 2006 WL 3575492, ¶ 20. "[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." *McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, at ¶ 75. A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 27, 514 N.E.2d 394.

{¶ 18} Appellant was convicted of complicity in the illegal possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A) and 2923.03. Appellant argues that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he (1) possessed the anhydrous ammonia, (2) aided Cook in possessing the anhydrous ammonia, or (3) shared Cook's alleged intent to use the anhydrous ammonia to manufacture methamphetamine.

{¶ 19} Under R.C. 2925.041(A), "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of [R.C.] 2925.04." Possession means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91, 24 O.O.3d 155, 434 N.E.2d 1362. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. Id. "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 20} "Complicity" is defined in R.C. 2923.03(A)(2) as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." To aid and abet is " '[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.' " *State v. Johnson* (2001), 93 Ohio St.3d 240, 243, 754 N.E.2d 796, quoting Black's Law Dictionary (7th Ed.1999) 69. "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *Johnson* at syllabus.

{¶ 21} Evidence of aiding and abetting may be shown by either direct or circumstantial evidence, and participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. *State v. Lett,* 160 Ohio App.3d 46, 2005-Ohio-1308, 825 N.E.2d 1158, ¶ 29. However, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner* (1982), 69 Ohio St.2d 267, 269, 23 O.O.3d 265, 431 N.E.2d 1025. "[T]here must be some level of active participation by way of providing assistance or encouragement." *State v. Nievas* (1997), 121 Ohio App.3d 451, 456, 700 N.E.2d 339.

{¶ 22} Upon thoroughly reviewing the record, we find that the evidence was sufficient to support a finding that appellant was guilty of complicity to illegal possession of chemicals for the manufacture of drugs. The state presented circumstantial evidence that appellant knowingly aided and abetted Bryan in the commission of the offense.

{¶ 23} We initially note that although appellant never physically possessed the anhydrous ammonia, the substance was in his constructive possession. Appellant testified that he smelled the anhydrous ammonia as they were driving away from the Miller property. Further, although he was allegedly "heavily intoxicated," there was unrebutted testimony that he gave directions to Wilma to get back to Bryan's house following the theft of the anhydrous ammonia. Thus, appellant was conscious of the presence of the anhydrous ammonia and able to exercise dominion and control over it, even though it was not within his immediate physical possession. *Hankerson,* 70 Ohio St.2d at 91, 24 O.O.3d 155, 434 N.E.2d 1362.

{¶ 24} The following evidence established beyond a reasonable doubt that appellant aided and abetted Bryan in possessing the anhydrous ammonia with the intent to manufacture methamphetamine. There was unrebutted testimony that appellant directed Wilma on how to get back to Bryan's house following the theft and while the car smelled strongly of ammonia. In addition, appellant had a physical reaction to the presence of the substance in the car. Recovered in the car were several items that could be used to manufacture methamphetamine (funnels, gloves, and an air compressor) and items that could only be used to manufacture methamphetamine (cans of starter fluid with puncture holes). When simply asked whether the Jeep was the car that Wilma usually drove, appellant volunteered to explain why these items were in the car. Appellant denied that they were used to manufacture methamphetamine. Bryan testified that even though he has used methamphetamine in the past, and even though it was difficult to handle the very volatile anhydrous ammonia in Wilma's car, he did

not intend to use the substance to manufacture methamphetamine. Rather, he was going to drive with the jar to another town to sell it to a friend.

{¶ 25} As previously noted, to aid and abet is to assist or facilitate the commission of a crime or to promote its accomplishment. *Johnson*, 93 Ohio St.3d at 243, 754 N.E.2d 796. Participation in criminal intent may be inferred from conduct after the offense is committed. Id. at 245, 754 N.E.2d 796. Considering all of the foregoing facts and circumstances in the light most favorable to the prosecution, we find that the evidence is sufficient to support appellant's conviction for complicity to illegal possession of chemicals for the manufacture of drugs.

{¶ 26} Appellant was also convicted of complicity in theft in violation of R.C. 2913.02(A)(1) and 2923.03. Appellant argues that the evidence presented at trial was insufficient to establish that he aided Cook in stealing the anhydrous ammonia. Rather, appellant was merely along for the ride when the theft occurred and did not know Cook intended to steal the anhydrous ammonia. Under R.C. 2913.02(A)(1), "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." Appellant agrees that the anhydrous ammonia was taken without the consent of its owner.

{¶ 27} There was testimony at trial that Bryan's girlfriend knew of Bryan's plan to steal anhydrous ammonia before he left his house with appellant and Wilma. Appellant claimed that Bryan needed a ride (in the middle of the night) to go to a relative's house to get money for his children's breakfast before they went to school (even though it was a Saturday). So "in the kindness of [his] heart and [Wilma's] heart you know [they] went and took him there." Appellant was allegedly intoxicated throughout the night. Yet he was able to remember that no one talked about stealing anhydrous ammonia and was able to direct Wilma back to Bryan's house after the theft. Appellant testified that he could smell the anhydrous ammonia as they were driving. Appellant also testified as to his physical reactions to the substance.

{¶ 28} Considering all of the foregoing facts and the circumstances surrounding the theft in the light most favorable to the prosecution, we find that the evidence is sufficient to support appellant's conviction for complicity in theft. The state presented evidence that appellant knowingly aided and abetted Bryan in obtaining or exerting control over the anhydrous ammonia without Miller's consent and with purpose to deprive Miller of the substance. Appellant's first assignment of error is overruled.

{¶ 29} Assignment of Error No. 2:

{¶ 30} "The state failed to present sufficient evidence to sustain appellant's conviction for breaking and entering."

{¶ 31} Appellant was convicted of breaking and entering in violation of R.C. 2911.13(B), which provides: "No person shall trespass on the land or premises of another, with purpose to commit a felony." Appellant argues that while a trespass may have occurred, the evidence presented at trial was insufficient to establish that appellant knew he trespassed or that he had the purpose to commit a felony because he was highly intoxicated that night.

{¶ 32} The offense of breaking and entering requires a defendant to have the specific intent of trespassing with the purpose to commit a felony. See *State v. Copeland* (Jan. 18, 2002), Montgomery App. No. 18711, 2002 WL 63161. The purpose to commit a felony may be proved by direct or circumstantial evidence. Furthermore, it is not necessary for the purpose to commit a felony to be formed before or at the time the initial trespass or entry is achieved. *State v. Bowling* (Aug. 12, 1985), Clermont App. No. CA85–01–001, at 5, citing *State v. Jones* (1981), 2 Ohio App.3d 20, 2 OBR 21, 440 N.E.2d 580 (the "purpose to commit a felony" element in R.C. 2911.13(B) may be formed while the trespass is in progress, and the plan need not be fashioned prior to the trespass).

{¶ 33} Appellant testified that because he had drunk several beers that night and taken the prescription medication Xanax earlier that day, he was highly intoxicated. Wilma testified that at Bryan's house, appellant was really drunk and could hardly walk. By contrast, there was no testimony from the officers present at the scene that appellant was or appeared to be intoxicated or that he had trouble walking. The Ohio Supreme Court has stated that "intoxication, even severe intoxication, can co-exist with purpose." *State v. Hicks* (1989), 43 Ohio St.3d 72, 74–75, 538 N.E.2d 1030. At trial, there was no evidence that appellant had been too intoxicated to form a purposeful intent. See *Copeland*.

{¶ 34} Given that (1) at least one person knew of Bryan's plan to steal anhydrous ammonia before he left his house with appellant and Wilma, (2) Bryan and appellant had known one another for several years, Bryan was a methamphetamine user, and had previously been arrested for stealing anhydrous ammonia from the Miller property, (3) appellant and Wilma allegedly agreed to give Bryan a ride in the middle of the night to get money from his relatives for school purposes for his children the next day (a Saturday), (4) Wilma's car traveled 400 to 500 feet behind Miller's house to reach the storage tanks, (5) testimony at trial was uncontroverted that the vehicle appellant was traveling in trespassed onto the Miller property, (6) although not prompted, appellant volunteered to explain why the funnels and cans of starter fluid were in Wilma's car, and (7) no evidence was presented at trial that even if appellant had been intoxicated, he was too

intoxicated to form a purposeful intent, we find that considering all of the foregoing facts and the circumstances surrounding the theft in the light most favorable to the prosecution, the evidence is sufficient to support appellant's conviction for breaking and entering. Appellant's second assignment of error is overruled.

{¶ 35} Assignment of Error No. 3:

{¶ 36} "The expert opinion testimony given by Lt. Pierce regarding a 'dragger pump' [sic] reading was not based upon a scientifically reliable and objectively verifiable test, and was not validly derived from widely accepted knowledge, facts or principles."

{¶ 37} At trial, the state presented the testimony of Lieutenant Pierce, the Ross County lab-certified methamphetamine technician. Lieutenant Pierce testified that at the scene, he "got [his] Dragger [sic] pump.[1] The Dragger pump tests if there is any ammonia in the air. I immediately tested it and it turned automatically purple, which stated that the air was polluted with ammonia. And then I did a PH and I believe the PH test was eight." According to Lieutenant Pierce, such a pH reading indicates that there are no acids and that "if it's not an acid, then it's ammonia." Appellant's attorney did not object to Lieutenant Pierce's testimony.

{¶ 38} On appeal, appellant argues that the trial court erred by admitting the Draeger test results because the state failed to establish the test's reliability in violation of Evid.R. 702. Appellant contends that Lieutenant Pierce testified on behalf of the state as an expert witness.

{¶ 39} It is well established that errors that arise during a trial that are not brought to the attention of the trial court are ordinarily waived and may not be raised on appeal unless there is plain error. *State v. McKee* (2001), 91 Ohio St.3d 292, 294, 744 N.E.2d 737; *State v. Rigdon*, Warren App. No. CA2006-05-064, 2007-Ohio-2843, 2007 WL 1662245, ¶ 13. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *McKee*; Crim.R. 52(B). Further, plain error

---

1. Draeger is the manufacturer of a brand of gas-detection kit. "The Draeger test is used to detect the presence of certain chemicals, including anhydrous ammonia. To conduct the test, * * * four steps [are] followed. * * * If the designated air contaminant is present, it reacts with the chemical reagent in the tube, producing a color change. See http://www.afcintl.com/tubemain.htm (last visited Mar. 11, 2004)." *West v. State* (Ind.App.2004), 805 N.E.2d 909, 912, fn. 1. In *West*, the defendant was convicted of illegal possession of anhydrous ammonia after a Draeger test identified the contents of a fire extinguisher as anhydrous ammonia. *West* held that because the prosecutor failed at trial to establish the reliability of the Draeger test, the trial court erred by considering the Draeger results in violation of Indiana Evid.R. 702(b). Id. at 913–914.

applies only to prevent a manifest miscarriage of justice. See *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894.

{¶ 40} Contrary to appellant's assertion, Lieutenant Pierce's testimony was not offered as expert testimony. Thus, Evid.R. 702 was not implicated. In *McKee*, the Ohio Supreme Court held that "the experience and knowledge of a * * * lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." *McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737, at syllabus. Applying this holding to a case involving police identification of anhydrous ammonia, the Third Appellate District held that with regard to the identity of a chemical, the state is "entitled to establish the identity of a drug through circumstantial evidence as long as a lay witness has first hand knowledge and a 'reasonable basis—grounded either in experience or specialized knowledge—for arriving at the opinion expressed.' " *State v. Vogel*, Crawford App. No. 3–05–10, 2005-Ohio-5757, 2005 WL 2840641, ¶ 11, quoting *Asplundh Mfg. Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng.* (1995), 57 F.3d 1190, 1198. The Third Appellate District found that in light of the police officers' testimony as to their education, training, and experience with anhydrous ammonia and as to their observations on the night in question and their opinion that the chemical tested was anhydrous ammonia, the trial court did not err by allowing them to testify as to the identity of the anhydrous ammonia. Id.

{¶ 41} In the case at bar, Lieutenant Pierce testified as to his education, training, and experience in the areas of methamphetamine and anhydrous ammonia. Lieutenant Pierce testified that based on the Draeger test results and the pH reading, the chemical found at the scene in the pickle jar was anhydrous ammonia. Based on *McKee* and *Vogel*, we find that Lieutenant Pierce was qualified to testify as a lay witness. The trial court therefore did not err by admitting Lieutenant Pierce's testimony as to the identity of the anhydrous ammonia. Appellant's third assignment of error is overruled.

{¶ 42} Assignment of Error No. 4:

{¶ 43} "The defendant['s attorney] was ineffective for failing to object to the expert opinion testimony regarding 'Dragger pump' [sic] and pH results where there was no disclosure by the prosecution of the intent to use such test results, and there was no foundation for the expert opinion testimony regarding those results."

{¶ 44} To prevail on an ineffective-assistance-of-counsel claim, a criminal defendant must make the two-pronged showing set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, a defendant must show that his counsel's performance was deficient, that is, that it "fell below an objective standard of reasonableness." Id. at 687–688. Second, a defendant

must show that his defense counsel's deficient performance prejudiced him, that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687, 694. A failure to make a sufficient showing on either the "performance" or "prejudice" prong of the *Strickland* standard will doom a defendant's ineffective-assistance claim. Id. at 697.

{¶ 45} Appellant argues that his trial counsel was ineffective because he failed to object to Lieutenant Pierce's expert witness testimony regarding the Draeger test results and the identity of the anhydrous ammonia. Contrary to appellant's assertion as stated in his fourth assignment of error, the record shows that the testing conducted by Lieutenant Pierce and the results of the testing were disclosed to appellant's trial counsel in the state's response to appellant's discovery request. As stated in the previous assignment of error, Lieutenant Pierce's testimony was not offered as expert testimony. Further, Lieutenant Pierce was qualified to testify as a lay witness regarding the identity of the anhydrous ammonia. There was therefore no basis for an objection to Lieutenant Pierce's testimony.

{¶ 46} We therefore find that appellant's trial counsel was not ineffective for failing to object to Lieutenant Pierce's testimony regarding the Draeger test results and the identity of the anhydrous ammonia. Appellant's fourth assignment of error is overruled.

{¶ 47} The judgment is affirmed.

Judgment affirmed.

BRESSLER and WALSH, JJ., concur.