[Cite as *State v. Garrison*, 2020-Ohio-1316.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-08-020 |
| | : | O P I N I O N |
| - vs - | | 4/6/2020 |
| | : | |
| ELISSIA D. GARRISON, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI20190117

Jess C. Weade, Fayette County Prosecuting Attorney, 110 East Court Street, 1st Floor, Washington Court House, Ohio 43160, for appellee

Steven H. Eckstein, 1208 Bramble Avenue, Washington Court House, Ohio 43160, for appellant

**PIPER, J.**

{¶ 1} Appellant, Elissia Garrison, appeals her convictions in the Fayette County Court of Common Pleas for two counts of felonious assault on law enforcement officers.

{¶ 2} A birthday celebration in honor of Garrison's mother occurred in multiple hotel rooms along the same hallway at a hotel in Jeffersonville, Ohio. In the early morning hours, the sheriff's department received a noise complaint and two officers responded to the hotel.

The sergeant and deputy arrived at the hotel and made contact with multiple attendees of the party who promised to control the noise and agreed not to cause any further complaints.

{¶ 3} As the officers were leaving, they were informed that an argument was occurring near the party rooms. The officers again contacted the partygoers and soon encountered Eric Stromer, who was Garrison's boyfriend and the father of her young child. The officers observed the argument and determined Stromer's conduct required his arrest. As the officers tried to place handcuffs on Stromer, he began resisting.

{¶ 4} Garrison and others approached the location in the hallway where the officers were in the process of handcuffing Stromer. Garrison's sister tried to push the onlookers away from the situation, including Garrison. As Garrison would approach Stromer, he would grab her and use her body to shield himself against the officers. By this time, the officers had managed to secure one of Stromer's hands in handcuffs, but due to Stromer's resistance, they were unable to secure the other.

{¶ 5} As Garrison was being used to shield Stromer's body, she held on to him with what could be described as a hug. Garrison repetitively did not obey the officers' orders to move away. The sergeant attempted several times to push Garrison away. Stromer repetitively grabbed her and used her body to shield himself from the officers. As the struggle continued, the group turned in a circular motion as Stromer kicked and twisted in an effort to avoid being handcuffed. After Garrison's repeated refusal to remove herself from the situation, the sergeant employed his taser on Garrison and she fell to the ground. In what appears to be a spontaneous reaction, Stromer reached for a small-caliber handgun in his pocket and shot multiple times, attempting to shoot the officers but only grazing the sergeant's neck.

{¶ 6} The state charged Garrison with two counts of felonious assault against a peace officer; attributing Garrison's role as an accomplice. She was also charged with

obstructing official business for interfering with Stromer's arrest. The matter proceeded to a jury trial, and Garrison was found guilty of all charges. The trial court merged the obstructing official business charge with the first count of felonious assault and sentenced Garrison to consecutive sentences for an aggregate 11-year prison term. Garrison now appeals her convictions, raising two assignments of error.[1]

{¶ 7} Assignment of Error No. 1

{¶ 8} THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S CRIM.R. 29 MOTION FOR ACQUITTAL AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO CONCLUDE THAT GUILT HAD BEEN PROVEN BEYOND A REASONABLE DOUBT IN VIOLATION OF HER RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 9} Garrison argues in her first assignment of error that the trial court erred in denying her Crim.R. 29 motion.

{¶ 10} Pursuant to Crim.R. 29(A), "the court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."

{¶ 11} The standard of review for a denial of a Crim.R. 29 motion is the same standard used for reviewing a sufficiency of the evidence challenge. *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. On a sufficiency challenge,

---

1. In response to both assignments of error, the Fayette County Prosecutor's office submitted an appellate brief containing only a few sentences for its Statement of Facts and its entire legal argument with application of the facts was less than two pages.

the reviewing court must determine whether the prosecution has met its burden of production. *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. Therefore, the reviewing court must examine the evidence to determine whether any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith*, 12th Dist. Warren Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 25.

{¶ 12} Garrison was convicted of two counts of felonious assault in violation of R.C. 2903.11(A)(2) and (D)(1)(a), which prohibit one from knowingly causing or attempting to cause physical harm to a peace officer by means of a deadly weapon.[2]  One acts "knowingly" if he or she is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature.  R.C. 2901.22(B).

{¶ 13} Garrison was charged as an accomplice according to R.C. 2923.03(A)(2), which prohibits an aider or abettor from acting with the same culpability as the principal offender required in the commission of the offense.  To support a conviction for complicity by aiding and abetting, the evidence must show that the defendant shared the criminal intent of the principal and incited, supported, assisted, cooperated with, or advised the principal in the commission of the act they shared.  *State v. Gragg*, 173 Ohio App.3d 270, 2007-Ohio-4731, ¶ 20 (12th Dist.).

{¶ 14} Thus, the state must prove two criminal intents for the accomplice: first, that the accomplice had the same criminal intent as the principal offender and, second, that the accomplice also intended to help the principal in a significant way with the offense committed.  *State v. Lockett*, 49 Ohio St.2d 48, 61-62 (1976).

---

2.  Garrison does not challenge her conviction for obstructing official business.

{¶ 15} Aiding and abetting may be inferred in a felony case like this where the facts show that the participants entered into a common design or joint enterprise and either the aider and abettor knew that an inherently dangerous instrumentality was to be employed to accomplish the felony, or knew the manner of its accomplishment would be reasonably likely to produce a certain result. *State v. Scott*, 61 Ohio St.2d 155, 165 (1980).

{¶ 16} However, a defendant cannot be adjudged guilty on the ground that he or she associates with bad people. *State v. Keenan*, 66 Ohio St.3d 402, 409-410 (1993). Peer association is insufficient for a finding of guilt because an accused must be found complicit in the occurrence of the actual crime charged. *State v. Henry*, 12th Dist. Clermont Nos. CA2013-12-095 and CA2013-12-097, 2014-Ohio-4624, ¶ 74; and *State v. Hall*, 8th Dist. Cuyahoga No.102789, 2016-Ohio-698 (charges were vacated where the complicity was based upon guilt by association, which is impermissible). Inferences of guilt premised upon poor character or association with others is contrary to fundamental notions of due process. *State v. Rohr-George*, 9th Dist. Summit No. 23019, 2007-Ohio-1264.

{¶ 17} After reviewing the record, the trial court erred in not granting Garrison's Crim.R. 29 motion as it related to the felonious assault charges because there is insufficient evidence that Garrison acted knowing that her conduct was reasonably likely to cause Stromer to use deadly force or that she knew it was a probable result that deadly force would occur. There is no doubt that Garrison's actions render her criminally liable for obstructing official business because her conduct made it more difficult for the officers to secure Stromer's arrest. But, in order for Garrison to be complicit in Stromer's criminal violence, the evidence must establish that she entered into a common design with Stromer to use deadly force or that she knew such violence was a probable result. In other words, the state had to produce evidence her conduct was "knowingly" regarding the shooting against the law enforcement officers. The state failed to carry this burden.

{¶ 18} The state argued that by making it more difficult to arrest Stromer, Garrison's actions allowed Stromer to shoot at the officers, wounding one.[3] However, the state was unable to present evidence that Garrison knew Stromer had a weapon that evening or that his resisting arrest was likely to end with Stromer deciding to shoot the officers. After the incident, law enforcement interviewed Garrison and she told them that she was trying to calm Stromer down by staying close to him and physically holding him during the struggle. There was no evidence submitted that indicated an intention or awareness that her interference would make it probable that Stromer would feloniously assault both officers using a firearm.[4]

{¶ 19} While Garrison may have aided Stromer in his attempt to impede officers from arresting him, the state did not present evidence that Garrison did anything to aide or abet Stromer in any action that made it probable that the officers would become Stromer's victims. The surveillance video of the incident clearly shows Garrison hugging and holding on to Stromer, Stromer grabbing Garrison and using her body to shield himself against the officers, and Garrison staying next to Stromer throughout the struggle. However, as wrongful as Garrison's conduct was, it was not shown she took action to encourage Stormer's ultimate act of violence against the officers.

{¶ 20} Instead, Garrison placed herself in between the officers and Stromer and refused to comply and leave the area. The sergeant even tried to push Garrison out of the

3. The state's theory is akin to using a but-for test. But for Garrison not interfering, the officers could have more easily arrested Stromer so that he would not have been able to act on his decision to shoot at the officers. However, the trial court was confined to the legal standard for complicity requiring a shared intent, not a but-for analysis or mere association/presence. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762.

4. One might choose to entirely disbelieve Garrison's statements, yet the state still has the burden to produce evidence demonstrating an accomplice's mens rea. *See State v. Coleman*, 37 Ohio St.3d 286 (1988). The prosecutor suggests that it be inferred Garrison knew Stromer possessed a firearm that evening and from that inference it be inferred Garrison knew Stromer would probably use it on the officers. The state's suggestion of an inference drawn upon an inference is well known to be impermissible. *State v. Palmer*, 80 Ohio St.3d 543 (1997).

way. Only when the sergeant was required to taze Garrison did she go to the ground wherein Stromer was able to reach in his pocket and remove his weapon for use. There is no doubt Stromer attempted to kill the two law enforcement officers who were merely doing their job. Any reasonable person would be outraged by Stromer's conduct and disturbed by Garrison's interference. Yet, the state presented no evidence suggesting Garrison foresaw Stromer's conduct, much less, that Garrison wanted the shooting to occur or that she could have predicted the shooting was a probable result. Stromer's abhorrent criminal conduct was likely as much a surprise to Garrison as it was to the sergeant and his deputy.

{¶ 21} The state presented evidence that Stromer was in a gang and that his nickname was Trig or Trigger in an attempt to infer that Garrison knew that Stromer had a firearm that evening. From that inference, the state draws a further inference that shooting at the officers would probably occur during Stromer's attempt to resist arrest. However, during the interview with law enforcement after the incident occurred, Garrison stated that she did not know that Stromer was carrying a firearm that night, and that she had asked him to leave any weapons at home given that it was her mother's birthday celebration. The state offered no evidence to contradict such statements.

{¶ 22} The state argued that even though Garrison asked Stromer to leave any weapons at home, he would not have listened to her as evidenced by the fact that Stromer had committed domestic violence against her in the past. However, Stromer's previous act of violence against Garrison does not demonstrate that he would fail to comply with her request to leave any weapons at home during the celebration of her mother's birthday. Moreover, Garrison was asked whether Stromer used a firearm during the violence that resulted in police arresting Stromer for domestic violence, and Garrison answered, "no." Nor is there any indication in the record that Stromer resisted arrest during the domestic violence incident.

{¶ 23} In fact, detectives asked Garrison if Stromer had ever had a run-in with police, and Garrison answered, "not that I know of * * * this is the first time." The state presented no evidence that Garrison knew of any propensity Stromer had for resisting arrest or fighting with law enforcement officers. The first time Stromer used a weapon in this manner was on the night of the incident. Stromer's reprehensible conduct appears spontaneous; without reflection or reason.

{¶ 24} Without knowing that Stromer had a weapon, much less that he would use it because of a minor incident, the evidence does not suggest that Garrison knew there was a likely risk that Stromer would shoot at the officers as a result of his desire not to be arrested. While Garrison definitely contributed to Stromer's resisting arrest, the evidence was insufficient to prove Garrison's knowledge of the weapon or that Stromer would use it to facilitate his resisting arrest.

{¶ 25} According to the United States Supreme Court, a

> defendant's knowledge of a firearm must be advance knowledge — or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense. But when the accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. * * * For the reasons just given, we think that means knowledge at a time that the accomplice can do something with it — most notably, opt to walk away.

*Rosemond v. United States*, 572 U.S. 65, 78, 134 S.Ct. 1240 (2014). (Emphasis sic.)

{¶ 26} By placing herself in close proximity to Stromer, Garrison could have been trying to calm her boyfriend down, or could have been trying to convince the police he did not need to be arrested, or could have been attempting to impede his arrest. However, this

would all be conjecture and speculation. Without evidence that Garrison knew that Stromer had a firearm on his person and that she knowingly accepted the risk that he would use it as part of his resisting arrest, Garrison was not given the choice to "quit the crime" as noted by the United States Supreme Court in *Rosemond*.

{¶ 27} After reviewing the record, we find the trial court erred in denying Garrison's Crim.R. 29 motion related to the two charges of felonious assault. Therefore, Garrison's first assignment of error is sustained.[5]

{¶ 28} The decision of the trial court is reversed, and Garrison is discharged as to the two felonious assault charges. We remand the matter to the trial court for resentencing on Garrison's obstructing official business conviction.

{¶ 29} Judgment reversed and remanded.

HENDRICKSON, P.J., and M. POWELL, J., concur.

---

5. Given the outcome of Garrison's first assignment of error, her second assignment of error is rendered moot.