OPINION
{¶ 1} The defendant-appellant, Jeffrey P. Vogel ("Vogel"), appeals from the judgment of the Crawford County Common Pleas Court finding him guilty of the illegal assembly or possession of chemicals for the manufacture of drugs, a violation of R.C. § 2925.041, a felony of the third degree, and sentencing him to four years in prison.
 {¶ 2} On November 8, 2004, the Crawford County Grand Jury indicted Vogel on one count of illegal assembly or possession of chemicals for the manufacture of drugs, a violation of R.C. § 2925.041, a felony of the third degree. The indictment alleged that on October 10, 2004, Vogel did assemble one or more chemicals used to manufacture methamphetamine, a schedule II controlled substance. A one day jury trial was held on January 13, 2005. The State of Ohio ("State") presented testimony from Scott Fackler ("Fackler"), a Crawford County Sheriff's deputy; Robert McLaughlin ("McLaughlin"), a captain in the Huron County Sheriff's department; and Christopher Heydinger ("Heydinger"), a detective sergeant in the Crawford County Sheriff's department. Vogel testified on his own behalf and presented the testimony of Richard Hencye, III ("Hencye"). The jury found Vogel guilty, and on January 20, 2005, the trial court entered its judgment finding Vogel guilty as charged in the indictment.
 {¶ 3} On the night of October 9, 2004 — October 10, 2004, Vogel was a passenger in a car with Hencye and the driver, John Onie ("Onie"). The car stopped on State Route 103 at the County Star Co-op ("Co-op"). Vogel and Hencye exited the car and retrieved a propane tank covered in camouflage tape from the trunk. While the men walked to the Co-op's anhydrous ammonia tanks, Onie drove away. Hencye connected the propane tank to a "nurse tank" of anhydrous ammonia with a clear plastic hose, and the men went back to the road where they were confronted by Fackler. Hencye fled into the fields, and Vogel fled to Shelby, Ohio. Hencye was found hiding in the field in the morning and arrested, and Vogel was arrested at a later time.
 {¶ 4} On March 9, 2005, the trial court held a sentencing hearing and filed its judgment entry, which sentenced Vogel to serve four years in prison and to pay a mandatory $5,000.00 drug fine. Vogel appeals from the March 9, 2005 judgment entry and asserts the following assignments of error:
The trial court erred in admitting photos and testimony regardinganhydrous ammonia and related paraphernalia, where the State failed tocomply with Ohio Revised Code 2925.51 and 2925.52.
 The trial court erred in permitting the conviction of Defendant basedupon insufficient proof.
 The trial court erred in permitting the jury to consider allegations ofother conduct of Defendant, where same was only marginally probative, butsignificantly outweighed by its potential to cause unfair prejudice.
 The trial court should not have given the jury instruction regardingthe testimony of an alleged accomplice, in violation of Ohio Revised Code2923.03(D).
 The trial court erred in sentencing Defendant to a greater than minimumprison sentence.
 {¶ 5} Vogel was convicted on one count of illegal assembly or possession of chemicals for the manufacture of drugs, a violation of R.C. § 2925.041, a felony of the third degree. The statute states:
[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.
Methamphetamine is a schedule II controlled substance.
 {¶ 6} Vogel's first assignment of error appears to set forth two separate arguments. As to the first issue, Vogel argues that the State violated his constitutional right to due process because it destroyed potentially exculpatory evidence without following the procedures established in R.C. §§ 2925.51 and 2925.52. Vogel contends that due process requires the State to follow established procedures when it disposes of potentially exculpatory evidence. The State argues that it may, but is not required to, file a motion prior to destroying a chemical sample. As to the second issue, Vogel argues that the trial court erred in admitting photographs and testimony to identify the chemical substance when the State failed to certify the identity of the chemical. The State contends it may prove the identity of a substance through circumstantial evidence, and Vogel's request to independently test the chemical on the morning of trial was untimely.
 {¶ 7} When a defendant's constitutional rights are potentially violated, the defendant should file a motion to suppress evidence, which must be filed either 35 days after arraignment or 7 days before trial, whichever is earlier. Crim.R. 12(D); State v. French, 72 Ohio St. 3d 446,449, 1995-Ohio-32, 650 N.E.2d 887. In his brief, Vogel argues he was deprived of due process when the State failed to follow the procedures established in the Revised Code for the destruction of chemical samples. This argument should have been made through a motion to suppress. Instead, after jury selection but before opening statements, Vogel's counsel made an oral motion to dismiss the indictment because the State failed to comply with R.C. §§ 2925.51 and 2925.52 when it destroyed the chemical sample. In overruling the motion, the trial court stated, "I accept the fact that this is the type of chemical that can't be stored, you know, and based on that and the time of your motion, it's going to be overruled." Trial Tr., Jun. 20, 2005, 74:6-9 (emphasis added). Vogel's argument is without merit because he failed to file a motion to suppress within the time limits established by Crim.R. 12(D).
 {¶ 8} Vogel's argument that the photographs and testimony concerning identification of the chemical should have been barred also fails. A trial court has sound discretion in deciding whether to admit evidence, and its decision will not be reversed on appeal absent an abuse of discretion. State v. Brownlow, 3rd Dist. No. 1-02-95, 2003-Ohio-5757, at ¶ 20 (citations omitted). Additionally, the trial court's abuse of discretion must have materially prejudiced the defendant. Id. (citation omitted). An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St. 2d 151,157, 404 N.E.2d 144.
 {¶ 9} Prior to trial, defense counsel made an oral motion in limine "because, in fact, we have no evidence that this stuff is anhydrous ammonia. There's been no chemical testing done." Trial Tr., 74:13-15. The trial court took the matter under advisement, but during trial, defense counsel failed to object both when the State introduced the photographs to the jury and when the trial court admitted the photographs into evidence. See Id. at 146-147. "Failure to object at trial to the admission of evidence waives any claim or error absent plain error."State v. Harney, 3rd Dist. No. 9-98-07, 1998 WL 438496, at *1 (citation omitted).
 {¶ 10} Plain error applies when a substantial right is affected, which may be grounds for reversal, even if not brought to the trial court's attention. Id. (citing Crim.R. 52(B)). However, plain error only applies to "prevent a manifest miscarriage of justice" and "`does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.'" Id. (quoting State v. Moreland
(1990), 50 Ohio St. 3d 58, 62, 552 N.E.2d 894). In this case, we cannot find plain error in the trial court's decision to admit the photographs into evidence because the State's witnesses authenticated them.
 {¶ 11} As to the testimony concerning the identity of the chemical, the State is entitled to establish the identity of a drug through circumstantial evidence as long as a lay witness has first hand knowledge and a "`reasonable basis — grounded either in experience or specialized knowledge — for arriving at the opinion expressed.'" State v. McKee,91 Ohio St. 3d 292, 294-296, 2001-Ohio-41, 744 N.E.2d 737 (citations omitted). In this case, Fackler and Heydinger testified as to their education, training, and experience with anhydrous ammonia. Trial Tr., 99:10-20; 133-136. Each deputy also testified about his observations on the night of October 9, 2004 — October 10, 2004, and each deputy opined that the chemical was anhydrous ammonia. Id. at 96:5-7; 99:21-25; 139:2-10. Based on this record, we cannot find the trial court abused its discretion in allowing the deputies to testify concerning the identity of the anhydrous ammonia. The first assignment of error is overruled.
 {¶ 12} In his third assignment of error, Vogel asserts three separate arguments; however, his final argument appears to be that the verdict was against the manifest weight of the evidence, and as such, it will be addressed with the second assignment of error. In his first argument, Vogel contends that the trial court erred by allowing testimony that he fled from Fackler, which is a "subspecies of `other acts', and should be subject to the limits of Rule 404 and Rule 403." Appellant's Br., Aug. 19, 2005, at 8. At trial, Fackler testified that Vogel fled, and defense counsel failed to object. We do not find plain error here because the Ohio Supreme Court has held that flight from law enforcement is evidence of a guilty conscience and ultimately, of guilt itself. State v.Williams (1997), 79 Ohio St. 3d 1, 11, 679 N.E.2d 646 (citations omitted).
 {¶ 13} Second, Vogel argues that the trial court erred by allowing the jury to watch a videotaped interview between Vogel and Huron County Sheriff's Deputy Robert McLaughlin because the video contained "bad character" evidence in violation of Evid.R. 404, and the prejudicial effect substantially outweighs the probative value under Evid.R. 403. The State contends that the video falls within the exception found in Evid.R. 404(B) because it shows Vogel's knowledge, motive, or intent.
 {¶ 14} Prior to trial, defense counsel made an oral motion in limine to prevent the jury from watching and listening to those parts of the interview concerning Vogel's outstanding warrants and his knowledge of the local drug culture. The trial court overruled the motion with no explanation, and an objection was also overruled before the video was played for the jury. Trial Tr. 71:10-11; 119:9. Our review of the video shows a brief discussion concerning an outstanding warrant from Florida at the beginning of the interview, but the remainder of the interview involves discussion about the local drug trade and the instant matter. During the interview, Vogel discusses his knowledge of the chemicals needed to manufacture methamphetamine, even if he never manufactured it himself. Vogel also discussed other anhydrous ammonia thefts, he told Heydinger that he saw Hencye wrap the propane tank in camouflage tape while he was at a party, and he saw other chemicals used to manufacture methamphetamine in Hencye's possession. The video clearly establishes knowledge under Evid.R. 404(B).
 {¶ 15} Under Evid.R. 403, we cannot find that the prejudicial effect substantially outweighed the probative value of the video when the warrant was for a burglary charge and the remainder of the video concerned Vogel's knowledge and use of methamphetamine, the manufacture of methamphetamine, and other thefts of anhydrous ammonia. Therefore, the trial court did not abuse its discretion in allowing the jury to view the video or in admitting the video as evidence. The third assignment of error is overruled.
 {¶ 16} Although Vogel's second assignment of error states there was "insufficient evidence" to convict him, his argument essentially states that the verdict was against the manifest weight of the evidence. The State's response addresses the assignment of error as a manifest weight argument. We believe the second assignment of error addresses manifest weight issues rather than the sufficiency of the evidence, and we will review it as such.
 {¶ 17} Weight of the evidence "`indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amountof credible evidence sustains the issue which is to be established before them. Weight . . . depends on its effect in inducing belief.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (emphasis in original). When an appellate court reviews cases on the basis that the verdict is against the manifest weight of the evidence, it acts as a "thirteenth juror". Id. An appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new hearing ordered. See State v.Adkins, 3rd Dist. No. 5-97-31, 1999-Ohio-881 (citation omitted). However, determinations concerning the weight of the evidence and credibility of the witnesses are better left to the trier of fact because it is able to observe the witnesses' demeanors and hear the testimony.State v. DeHass (1967), 10 Ohio St. 2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 18} In this case, we cannot find the jury clearly lost its way. Each witness for the State was subject to cross-examination by defense counsel. The first witness for the State, Fackler, testified on direct examination that he saw two males exit a car, retrieve a tank from the trunk, close the trunk, and walk toward the Co-op while Onie drove away. Trial Tr. 85:17-25. Fackler also testified that Vogel fled when he confronted him, the propane tank was attached to a "nurse tank" of anhydrous ammonia, and he smelled anhydrous ammonia when he approached the tanks. Id. at 93, 95-97, 99. On cross-examination, Fackler testified that he was unable to see whether Vogel or Hencye carried the propane tank from the car to the nurse tank, he was unable to see the nurse tank from his position, he was unable to see who attached the propane tank to the nurse tank, and he did not perform a field test to determine if the chemical was anhydrous ammonia. Id. at 104-105, 110.
 {¶ 19} The second witness for the State, McLaughlin, testified to the following: methamphetamine is a form of speed, anhydrous ammonia is an ingredient used to manufacture methamphetamine, anhydrous ammonia causes frost to appear on its container because of how cold it is. Id. at 120-122. The above mentioned video was played for the jury during McLaughlin's testimony. The State's third witness, Heydinger, testified that anhydrous ammonia is an ingredient used to manufacture methamphetamine, a clear plastic hose connected the propane tank to the nurse tank, he photographed the crime scene, he could smell anhydrous ammonia when he reported to the crime scene, and the propane tank was approximately ½ to ¾ full with anhydrous ammonia. Id. at 134, 138-139, 145.
 {¶ 20} Hencye was the first witness to testify for Vogel, and he testified to the following on direct examination: the car stopped at the Co-op, he "don't think [Vogel]" knew it was Co-ops", Vogel got out of the car to relieve himself, he took the propane tank from the car and hooked it up to the nurse tank, Vogel was just following him, Vogel did not know he was going to steal anhydrous ammonia. Id. at 155-159. On cross-examination, Hencye testified that he fled from Fackler, he wrote a letter to Vogel from jail, and he intended to make methamphetamine with the stolen anhydrous ammonia. Id. at 162-165. We note that the letter from Hencye to Vogel stated in pertinent part: "There's stuff on it. I thought I was the only one they caught. . . . I don't know about you, but I think that we were set up. Just think about all the events of the night was bullshit. The car ride alone makes me wonder about it." Id. at State's Ex. 8.
 {¶ 21} Vogel testified on his own behalf to the following: he got out of the car to relieve himself, Hencye took something out of the trunk, the car sped away, he did not know Hencye's intent at that time, he followed Hencye around a building and onto the Co-op's property, he ran away when he saw Hencye connect the propane tank to the nurse tank with a clear hose, he fled when confronted by Fackler, and he had no intention to take the anhydrous ammonia. Id. at 169-170, 176. On cross-examination, Vogel testified that he saw the propane tank prior to initially getting in the car with Hencye and Onie, he saw sulfuric acid in Hencye's bag in the trunk, he walked to the nurse tanks, and he had been convicted of burglary in Florida in 2002 and making false statements. Id. at 176-180.
 {¶ 22} From this record, we cannot find the jury lost its way in reaching its verdict. There was some conflicting testimony during the trial, but the jury was in the better position to hear the testimony, observe the witnesses, and make a determination as to credibility. The State presented evidence that Vogel had constructive possession of the anhydrous ammonia, which is used to manufacture anhydrous ammonia. The second assignment of error is overruled.
 {¶ 23} In the fourth assignment of error, Vogel contends that the trial court erred when it instructed the jury on accomplice testimony. Vogel contends that the instruction was improper since the statute it is based upon clearly provides for an accomplice testifying against the defendant, and in this case, Hencye testified for Vogel. The State contends that Hencye did testify against Vogel because his testimony was damaging to the defense.
 {¶ 24} We have found nothing in the record indicating that Vogel objected to the trial court's instructions to the jury. If a party fails to object to the trial court's jury instructions, it waives any argument on appeal unless the error constitutes plain error. See State v.Williams, 8th Dist. No. 67970, 1995 WL 614501, at * 10 (citing State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804).
 {¶ 25} We have previously held "unless a witness has been indicted, trial courts are not required to give the accomplice instruction set forth in R.C. 2923.03(D)." State v. Perry, 157 Ohio App. 3d 443,2004-Ohio-3020, 811 N.E.2d 614, at ¶ 16 (citation omitted). In those cases, the alleged accomplices had testified as witnesses for the State, and the defendants had requested the jury instruction on accomplice testimony because the accomplice may have been motivated by self-interest to testify against the defendant.
 {¶ 26} In this case, the trial court read the following instruction:
TESTIMONY OF ACCOMPLICE
You have heard testimony from Richard L. Hencye, another person who pleaded guilty to the same crime charged in this case and is said to be an accomplice. An accomplice is one who purposely or knowingly assists or joins another in the commission of a crime. Whether Richard Hencye was an accomplice and the weight to give his testimony are matters for you to determine.
Testimony of a person who you find to be an accomplice should be viewed with grave suspicion and weighed with great caution.
Trial Tr., 203:7-15. Here, there is no evidence that Hencye had been indicted for conspiracy or complicity under either R.C. § 2923.01 or §2923.03. Additionally, Hencye testified on behalf of Vogel. However, the content of his testimony was contrary to Vogel's defense as most of it confirmed what Fackler had witnessed, and those parts of his testimony concerning what Vogel did or did not know were improper as he had no first hand knowledge as to Vogel's knowledge.[1] The trial court's instruction was substantially similar to Alternative 1 of O.J.I. § 405.41. Vogel was not charged with conspiracy or complicity, so the trial court was not required to add the additional instruction language found in R.C. §§ 2923.01 or 2923.03. We find no plain error in the trial court's instruction on accomplice liability, and the fourth assignment of error is overruled.
 {¶ 27} In the final assignment of error, Vogel contends that the trial court erred by sentencing him to a prison term greater than the statutory minimum for a third degree felony. The basis of this argument is without specific findings made by the jury or admissions made by the defendant, imposing a sentence greater than the statutory minimum violates the holding in Blakely v. Washington (2004), 542 U.S. 296. We have previously addressed this issue in State v. Trubee, 3rd Dist. No. 9-03-65, 2005-Ohio-522. In Trubee, we held:
[u]nlike the Washington statute, the sentencing "range" created by R.C. 2929.14(B) is not "the maximum sentence a judge may impose solely onthe basis of facts reflected in the jury verdict or admitted by thedefendant.". . . Rather it limits a defendant's potential sentence within the statutory range created by R.C. 2929.14(A). Put simply, the facts reflected in a jury verdict convicting a defendant of a third degree felony allow a sentence of up to five years. R.C. 2929.14(B) merely limits judicial discretion in sentencing within that range. Id. at ¶ 23 (citations omitted). Thus, Blakely, supra does not apply to the Ohio sentencing statutes. The fifth assignment of error is overruled.
 {¶ 28} The judgment of the Crawford County Common Pleas Court is affirmed.
Judgment affirmed.
 Cupp, P.J., and Shaw, J., concur.
[1] We also note that the State failed to object to this line of questioning during trial.