[Cite as *State v. Bowling*, 2014-Ohio-1690.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2013-08-159 |
| | : | O P I N I O N |
| - vs - | | 4/21/2104 |
| | : | |
| PAMELA J. BOWLING, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-01-0043

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Fl., Hamilton, Ohio 45011, for plaintiff-appellee

Jeffrey W. Bowling, 315 South Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Pamela J. Bowling, appeals her conviction in the Butler County Court of Common Pleas for one count of illegal assembly or possession of chemicals for the manufacture of drugs.  For the reasons set forth below, we affirm appellant's conviction.

{¶ 2} Appellant was indicted on one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041, a third-degree felony.[1] The charge arose against appellant after several products commonly used in the manufacture of methamphetamine were found during a search of her vehicle during a traffic stop.

{¶ 3} On January 9, 2013, Adam Brennan, a Menards employee, observed Kelsey Miller purchase a bottle of lye, Kleen-Out Drain Opener. Menards blacks out the bar codes of lye and other products that are commonly used for the purpose of manufacturing drugs, specifically methamphetamine.[2] Brennan followed Miller outside and observed her getting into the front passenger seat of a Kia sports utility vehicle. The vehicle was driven by appellant. Brennan then observed the vehicle drive towards the exit doors of the store, and a male, James Brown, enter the back of the vehicle. Brennan had seen Brown in the store earlier, asking for lithium batteries and Coleman fuel. Pursuant to company policy, Brennan contacted his manager to report the suspicious purchases, and the manager contacted the police.

{¶ 4} Officer Latona Reid was dispatched to the store "in reference to a young male and female inside the store purchasing meth products." Upon arriving at Menards, Officer Reid observed appellant's vehicle and further observed Brown and Miller getting into the vehicle. Officer Reid followed the vehicle as it left the store's parking lot and initiated a traffic stop after observing the vehicle go left of center twice. Officer Brandon McCroskey arrived at the scene shortly after Officer Reid initiated the stop.

---

1. Appellant was originally indicted on a second-degree felony count of illegal assembly or possession of chemicals for the manufacture of drugs in violation R.C. 2925.041. However, upon motion by the state, the trial court ordered the indictment amended to a third-degree felony violation of R.C. 2925.041.

2. Menards blacks out the bar codes of these products such that when a person takes the item to the counter to be purchased, the transaction takes a few extra minutes which allows the store's surveillance camera to capture the individual on film.

{¶ 5}  During the traffic stop, appellant consented to a search of her vehicle.  In that search, the officers recovered a bottle of Kleen-Out, lye drain cleaner and a package of lithium batteries in the "passenger compartment in the middle-C area."[3]  The officers also discovered a box of pseudoephedrine inside a drawer located underneath the front passenger seat of the vehicle, as well as a receipt dated January 8, 2013 at 5:57 p.m. from Walgreens Pharmacy for Wal-Phed d-tab, a generic form of pseudoephedrine.  Appellant, Miller, and Brown were all subsequently placed under arrest.

{¶ 6}  The case proceeded to a jury trial, held on July 8 and 9, 2013.  The jury found appellant guilty of illegal assembly or possession of chemicals for the manufacture of drugs. The trial court sentenced appellant to nine months in the Ohio Department of Rehabilitation and Control, suspended her driver's license for three years, and ordered her to pay the costs of prosecution.

{¶ 7}  Appellant appeals her conviction raising four assignments of error for our review.  For ease of discussion, we will address appellant's third and fourth assignments of error together.

{¶ 8}  Assignment of Error No. 1:

{¶ 9}  THE COURT ERRED WHEN IT PERMITTED SERGEANT HACKNEY TO TESTIFY AS TO THE ITEMS USED TO MANUFACTURE METHAMPHETAMINE.

{¶ 10} In her first assignment of error, appellant asserts the trial court erred in admitting Sergeant Hackney's testimony that the items recovered from her vehicle are items commonly used to manufacture methamphetamine.

{¶ 11} At trial, Officer McCroskey identified the items recovered during the search of appellant's vehicle, including a box of pseudoephedrine, a bottle of lye drain cleaner, and a

---

3.  The bottle of Kleen-Out is conspicuously labeled as 100 percent lye.

package of lithium batteries. Later, during the testimony of Sergeant Hackney, a supervisor for the Butler County Undercover Regional Narcotics Unit (BURN Unit), the state presented Sergeant Hackney with these same items. Sergeant Hackney testified that these items are "commonly used in the manufacture of methamphetamine." Appellant contends that this testimony was improper as the state failed to present "evidence to prove that the chemicals contained in the lye container, battery package[,] or Wal-Phed pseudoephedrine package contained the product the packaging claimed to be."

{¶ 12} Generally, this court will not reverse a trial court's decision regarding the admission of evidence absent an abuse of discretion. *State v. Perkins*, 12th Dist. Preble No. CA2012-09-12, 2013-Ohio-3409, ¶ 24. However, when a party fails to object at trial to the issue under appeal, we review for plain error. Crim.R. 52(B); *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 108. The record demonstrates appellant objected to Sergeant Hackney's testimony on the basis that his testimony was "beyond the scope of a lay witness." There is no indication appellant also objected to Sergeant Hackney's testimony for the reasons now raised on appeal. Accordingly, we review this issue for plain error.

{¶ 13} An alleged error constitutes plain error only if the error is obvious and but for the error, the outcome of the trial clearly would have been different. *State v. Blankenburg,* 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 53 (12th Dist.), citing *Lang* at ¶ 108. Notice of plain error is to be taken with utmost caution and should be invoked only to prevent a clear miscarriage of justice. *Id.* A finding of harmless error, however, is appropriate where there is "overwhelming evidence of guilt" or "some other indicia that the error did not contribute to the conviction." *State v. Sims,* 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 34, quoting *State v. Ferguson*, 5 Ohio St.3d 160, 166 (1983), fn. 5.

{¶ 14} As an initial matter, we note, and appellant agrees, Sergeant Hackney's training and experience permitted him to testify as to what chemicals are used to manufacture

methamphetamine. This court has previously stated that "[t]he experience and knowledge of a * * * lay witness can establish his * * * competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, ¶ 46, quoting *State v. McKee*, 91 Ohio St.3d 292 (2001), syllabus; *State v. Montoya*, 12th Dist. Clermont No. CA2012-02-015, 2013-Ohio-3312, ¶ 44 ("a police officer's lay opinion regarding the identity of a substance is admissible based on his or her experience and training"); *see also State v. Gragg*, 173 Ohio App.3d 270, 2007-Ohio-4731, ¶ 41 (12th Dist.). Essentially, appellant asserts that although Sergeant Hackney was qualified to provide a general opinion about the products commonly used to make methamphetamine, he was not qualified to provide an opinion about whether the specific items recovered from appellant's vehicle were, in fact, those that are commonly used to manufacture methamphetamine because the packages recovered were not tested to confirm their identity, i.e. that the packages actually contained pseudoephedrine, lithium batteries, and lye drain cleaner.

{¶ 15} The state, however, was not required to present evidence that the substance in the packages were "actually" pseudoephedrine, lithium batteries, and lye drain cleaner. *See State v. Rollins*, 3d Dist. Paulding No. 11-05-08, 2006-Ohio-1879, ¶23-25, (finding that although the state did not present evidence that the substance in the tank was actually anhydrous ammonia, an ingredient used to make methamphetamine, the state produced sufficient circumstantial evidence that the defendant was in possession of anhydrous ammonia). Rather, the state may prove the identity of the substance contained in the package by circumstantial evidence. "Courts have held that the government may establish the identity of a drug through cumulative circumstantial evidence." *State v. Montoya*, 12th Dist. Clermont No. CA2012-02-015, 2013-Ohio-3312, ¶ 43, quoting *United States v. Schrock*, 855 F.2d 327, 334 (6th Cir.1988). Circumstantial evidence is proof of certain facts and

circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind. *State v. Ortiz-Bajeca*, 12th Dist. Butler No. CA2010-07-181, 2011-Ohio-3137, ¶ 20. The government only needs to produce sufficient evidence, direct or circumstantial, from which the trier of act is able to identify the substance beyond a reasonable doubt. *Montoya* at ¶ 44. As mentioned above, a lay witness may express his opinion as to the identity of a controlled substance as long as such opinion is based on the experience and knowledge of the witness. *Cox* at ¶ 46; *Montoya* at 44. The state is not required to present scientific evidence, as such evidence is not always available because illegal drugs, by their nature, are sold or consumed. *Montoya* at ¶ 44. However, when no foundation is laid for lay-witness testimony and there is no scientific evidence, there is a lack of sufficient evidence for a drug conviction. *Id.*

{¶ 16} In the present case, the identity of the items contained in the packaging found in appellant's vehicle was established by cumulative circumstantial evidence. Brennan, an employee at Menards, observed Miller "grab a bottle of lye" off the shelf, purchase the item, and enter appellant's vehicle with this bottle. In addition, he also observed Brown in the store, searching for lithium batteries. Brennan, who has been employed by Menards for six years, certainly had the personal knowledge of the store's merchandise to identify the lye drain cleaner and lithium batteries. Appellant's vehicle was pulled over and searched by the officers just minutes after Miller and Brown left the store. When the items were recovered by Officer McCroskey, the packages were unopened. Miller, an admitted user of methamphetamine, testified that she purchased the bottle of lye for the specific purpose of using it to make methamphetamine. Miller also stated that Brown agreed he would purchase the batteries "for meth." As for the package of pseudoephedrine recovered from appellant's vehicle, it was similarly unopened. Appellant admitted during her interview with Agent Lenny Hollandsworth, an agent with the BURN Unit, that she had purchased the box of

pseudoephedrine. From this evidence, the state presented sufficient evidence for the finder of fact to conclude that it was indeed pseudoephedrine, lye drain cleaner, and lithium batteries contained in the packages found in appellant's vehicle.

{¶ 17} In addition, even if this court were to assume Sergeant Hackney's testimony was admitted in error, such error would not rise to the level of plain error. Miller testified that "[l]ye drainage for the drains, lithium batteries, [and] Sudafed" are used to make methamphetamine.[4] Miller also testified that on January 9, 2013, she, appellant, and Brown went about purchasing the pseudoephedrine, drain cleaner, and batteries "for meth." Accordingly, in light of the other evidence supporting her conviction, the outcome of trial would not have been different absent the testimony of Hackney.

{¶ 18} For the reasons discussed above, appellant's first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO KELSEY MILLER'S TESTIMONY AS TO THE ITEMS USED TO MANUFACTURE METHAMPHETAMINE.

{¶ 21} In her second assignment of error, appellant argues that her trial counsel was ineffective.

{¶ 22} To prevail on an ineffective assistance of counsel claim, appellant must show trial counsel's performance fell below an objective standard of reasonableness and she was prejudiced as a result. *State v. Ward-Douglas*, 12th Dist. Warren No. CA2011-05-042, 2012-Ohio-4023, ¶ 96, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 693, 104 S.Ct. 2052 (1984); *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, ¶ 6. In order to demonstrate

---

4. Sudafed is an over-the-counter cold medicine which contains pseudoephedrine as an ingredient.

prejudice, appellant must establish, but for counsel's errors, there is a reasonable probability that the result of trial would have been different; a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Burke* at ¶ 6. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 50.

{¶ 23} Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. It is not the role of the appellate court to second guess the strategic decisions of trial counsel. *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052, CA2007-04-053, 2008-Ohio-3383, ¶ 61.

{¶ 24} In the present case, appellant asserts her counsel was ineffective for failing to object to Miller's lay-opinion testimony. At trial, Miller testified that pseudoephedrine, lithium batteries, and lye are all used in the manufacture of methamphetamine. Appellant contends her trial counsel should have objected to this testimony because, according to appellant, the state failed to establish the proper foundation for Miller's opinion as she only testified that she was a "user" of methamphetamine.

{¶ 25} Evid.R. 701 permits a lay witness to offer an opinion as long as such opinion is: (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. Pursuant to Evid.R. 701, the Supreme Court has held that the experience and knowledge of a drug-user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established. *State v. McKee*, 91 Ohio St.3d 292, 297 (2001). The identity of a drug may be established through circumstantial evidence as long as the lay witness has "first hand [sic] knowledge and a 'reasonable basis – grounded either in experience or specialized knowledge – for arriving at the opinion

expressed.'" *State v. Gragg*, 12th Dist. Fayette No. CA2006-09-038, 2007-Ohio-4731, ¶ 40, quoting *State v. Vogel*, 3d Dist. Crawford No. 3-05-10, 2005-Ohio-5757, ¶ 11; *see also McKee* at 297.

{¶ 26} We find that Miller was qualified as a lay witness to testify regarding the products used to manufacture methamphetamine. At trial, Miller testified that she uses methamphetamine. Contrary to appellant's assertions, Miller also testified that she has seen methamphetamine made. Specifically, the state questioned whether she knew what items go into the making or manufacture of methamphetamine. Miller responded that she did and identified "[l]ye drainage for the drains, lithium batteries, and Sudafed" as the necessary items. Furthermore, Miller explained she had purchased items to be used in the manufacture of methamphetamine prior to the events on January 9, 2013, and had purchased such items with appellant. Accordingly, Miller's knowledge as to the items used to manufacture methamphetamine was a result of her first-hand use and experience in not only using methamphetamine, but also observing it being made, and participating in obtaining items necessary to its manufacture. Moreover, trial counsel was entitled to and in fact cross-examined the credibility of Miller's opinion regarding the products used to manufacture methamphetamine.

{¶ 27} Based on the foregoing, we find that trial counsel was not ineffective in failing to object to Miller's testimony as such testimony was admissible.

{¶ 28} Appellant's second assignment of error is overruled.

{¶ 29} Assignments of Error No. 3 and No. 4:

{¶ 30} THE STATE OF OHIO PRESENTED INSUFFICIENT EVIDENCE TO CONVICT [APPELLANT] OF ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS.

{¶ 31} In her third and fourth assignments of error, appellant asserts the state failed to

present sufficient evidence to support her conviction for illegal assembly or possession of chemicals for the manufacture of drugs.

{¶ 32} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Perkins*, 12th Dist. Preble No. CA2012-09-012, 2013-Ohio-3409, ¶ 8, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds.

{¶ 33} In the present case, appellant was convicted of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041. R.C. 2925.041 states, in part:

> (A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.
>
> (B) In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section.

{¶ 34} Appellant contends the state failed to prove that the chemicals found in her vehicle were in fact chemicals that are commonly used in the manufacture of methamphetamine and that she knowingly "possessed" such chemicals.

{¶ 35} According to R.C. 2901.22(B), "a person acts knowingly, regardless of his

purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Possession means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *Perkins* at ¶ 11. "Constructive possession exists when one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession." *Id.* Dominion and control can be proven by circumstantial evidence alone. *State v. Gaefe*, 12th Dist. Clinton No. CA2001-11-043, 2002-Ohio-4995, ¶ 10.

{¶ 36} Appellant argues that the state failed to prove she was in possession of the items found in her vehicle because the items were found in the back of the vehicle. Further, she asserts the state did not prove she exercised dominion and control over the items because all the evidence indicated she never exited the vehicle until after she was stopped by Officer Reid. Appellant testified in her own defense that she was only giving Miller and Brown a ride. She also testified that she had never met Brown before that day. According to appellant, she was unaware of the items purchased by either Brown or Miller and was unaware that their intent was to use the products to produce methamphetamine. Appellant denied knowing that drain cleaner, batteries, and pseudoephedrine are commonly used to make methamphetamine prior to hearing the testimony at trial.

{¶ 37} The state presented testimony and evidence which directly contradicted appellant's version of events. Miller testified that the day before their arrest, she and appellant went out to several stores in the area and methodically purchased pseudoephedrine for the purpose of making methamphetamine or exchanging the pills for methamphetamine. Miller also testified that appellant sent her to Brown's residence to obtain

the methamphetamine. A text message sent from appellant's cellular telephone indicated that appellant wanted "three-quarters" of a gram of methamphetamine per box. Agent Hollandsworth, who interviewed appellant the day of her arrest, confirmed that it is common to exchange methamphetamine for pseudoephedrine boxes. This evidence indicates that appellant was well aware of the products used in the manufacture of methamphetamine and, in fact, knew Brown well before picking him up on January 9, 2013.

{¶ 38} Furthermore, Miller testified that prior to going to Menards on January 9, 2013, she, Brown, and appellant had a conversation regarding what each person was going to purchase. Miller further stated that the purpose of these purchases was "for meth." Accordingly, the jury could have inferred from this testimony that appellant was certainly conscious of the presence of the pseudoephedrine, drain cleaner, and lithium batteries in her vehicle. In addition, although there is no indication that appellant was in actual possession of the drain cleaner or batteries, the state presented evidence which demonstrated that she was *able* to exercise the necessary dominion and control over the items to establish constructive possession. The items were recovered from appellant's own vehicle and were near where she was sitting. Moreover, the pseudoephedrine box was well within appellant's reach. Appellant herself admitted she had purchased pseudoephedrine. According to Miller, this purchase of pseudoephedrine was "for meth." Therefore, by appellant's own admission, she possessed at least one item necessary for the manufacture of methamphetamine, and it is clear that possession of a single chemical is sufficient under the statute.

{¶ 39} After viewing the evidence in a light most favorable to the prosecution, we find the jury could have found that appellant knowingly possessed one or more chemicals that may be used in the manufacture of methamphetamine.

{¶ 40} In challenging the evidence supporting her conviction, appellant also contends that the state failed to present evidence that the chemicals in the packaging were in fact lye

drain cleaner, lithium batteries, and pseudoephedrine. Appellant once again asserts the state failed to prove that the products contained inside the packages recovered from her vehicle are those used to manufacture methamphetamine.

{¶ 41} As described in our resolution of the first assignment of error, the state was not required to present scientific evidence to establish the identity of chemicals found in appellant's vehicle. *See Montoya*, 2013-Ohio-3312 at ¶ 43-44. Rather, the state presented sufficient circumstantial evidence, through the testimony of Miller, Officer McCroskey, and Brennan, which allowed the finder of fact to conclude it was indeed pseudoephedrine, lye drain cleaner, and lithium batteries contained in the packages found in appellant's vehicle. Moreover, based on Sergeant Hackney's testimony that the products possessed by appellant are commonly used in the manufacture of methamphetamine, the fact-finder was capable of drawing the reasonable inference that such packaging contained "chemicals" necessary to the manufacture of methamphetamine.

{¶ 42} In addition, Miller's testimony, if believed, was sufficient to support appellant's conviction. Miller testified that "[l]ye drainage for the drains, lithium batteries, [and] Sudafed" are used to make methamphetamine. Miller further stated that she and appellant had purchased pseudoephedrine on the day before their arrest to make methamphetamine. In addition, Miller testified that on January 9, 2013, she, appellant, and Brown went about purchasing pseudoephedrine, and the drain cleaner and batteries from Menards "for meth."

{¶ 43} Based on the foregoing, the record indicates that the jury could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, appellant's third and fourth assignments of error are overruled.

{¶ 44} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.