[Cite as *State v. Shindeldecker*, 2016-Ohio-264.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2015-06-014 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 1/25/2016 |
| - vs - | | |
| | : | |
| DAVID H. SHINDELDECKER, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 14CR11683

Martin P. Votel, Preble County Prosecuting Attorney, Gractia Manning, Preble County Courthouse, 101 East Main Street, Eaton, Ohio 45320,, for plaintiff-appellee

Kim Schneider, P.O. Box 18104, Fairfield, Ohio 45018, for defendant-appellant

**M. POWELL, P.J.**

{¶ 1} Defendant-appellant, David Shindeldecker, appeals his conviction in the Preble County Court of Common Pleas for various offenses related to the manufacture, assembly, and possession of methamphetamine. For the reasons detailed below, we affirm.

{¶ 2} Deputies with the Preble County Sheriff's Office arrested Shindeldecker after observing him operating a vehicle while on a suspended license. During a search incident to arrest, Deputy Shane Hatfield located a clear plastic container of methamphetamine in

Shindeldecker's jacket, as well as several packages of pseudoephedrine located in Shindeldecker's vehicle. Authorities also discovered in Shindeldecker's jacket a soft, "grenade shaped" wallet containing methamphetamine while he was being booked into the county jail.

{¶ 3} The next day, Deputy Hatfield and Deputy Robert Schneider went to the residence Shindeldecker shared with his mother and searched the property. Upon obtaining consent to search the garage, the deputies discovered a methamphetamine lab. The methamphetamine lab was located approximately 70 feet from the rear of the residence where Shindeldecker's children would visit every other weekend.

{¶ 4} Shindeldecker was subsequently charged with (1) illegal manufacture of drugs, in violation of R.C. 2925.04(A), a first-degree felony; (2) illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, a second-degree felony; (3) endangering children, in violation of R.C. 2919.022(B)(6), a third-degree felony; (4) illegal conveyance of weapons or prohibited items onto grounds of specified government facility, in violation of R.C. 2921.36(A)(2), a third-degree felony; (5) aggravated possession of drugs, in violation of R.C. 2925.11, a third-degree felony; and (6) a drug paraphernalia offense, in violation of R.C. 2925.14, a fourth-degree misdemeanor. The case proceeded to a jury trial. However, 12 days prior to the trial date, Shindeldecker requested a substitution of counsel. The trial court denied Shindeldecker's request and the matter proceeded as scheduled.

{¶ 5} The state presented the testimony of the arresting officers who testified that they discovered methamphetamine and pseudoephedrine pills in Shindeldecker's vehicle, which contain chemicals commonly used in the manufacture of methamphetamine. In addition, Deputy Hatfield and Deputy Schneider testified about the methamphetamine lab that was discovered at Shindeldecker's residence. Deputy Schneider further explained the

process used in the manufacture of methamphetamine and described in detail the various items located in the garage, including the chemicals and reaction jars in various stages of the methamphetamine production process.

{¶ 6} In addition to this testimony, Deputy Paul Plaugher, an evidence technician, testified about the hazardous evidence that was collected during the investigation and the need to safely dispose of those items due to the danger of combustion. Deputy Plaugher also testified that he obtained fingerprints from the reactions jars. A lab technician later confirmed that Shindeldecker's prints were on items contained in the methamphetamine lab.

{¶ 7} The state next presented the testimony of Agent Dwight Aspacher from the Ohio Bureau of Criminal Identification and Investigation. Agent Aspacher testified about the manufacturing process for methamphetamine and explained that the manufacturing process found in Shindeldecker's garage had been taking place for several months.

{¶ 8} Shindeldecker's mother, Gloria Wills, testified that Shindeldecker has been living with her for several years and that she does not use the garage. Wills testified that Shindeldecker primarily used the garage for painting and working on cars. In addition, Stephanie Smith testified that she has two minor children with Shindeldecker, and they were with Shindeldecker every other weekend during the time period that the methamphetamine lab would have been in operation.

{¶ 9} Shindeldecker testified in his own defense. During his testimony, Shindeldecker admitted that he was aware of the presence of many of the items law enforcement discovered in the garage, but denied any knowledge about the presence of the methamphetamine lab. Rather, Shindeldecker claimed that there were at least two other individuals who were in the garage during the relevant time. However, Shindeldecker admitted that he worked in the garage where the methamphetamine lab was located, and that it was possible that he had purchased or attempted to purchase pseudoephedrine during

the relevant time period.

{¶ 10} The jury returned a guilty verdict as to all counts alleged in the indictment. The trial court imposed a prison term of five years for the illegal manufacture of drugs, three years for endangering children, and three years for the illegal conveyance of prohibited items. Those counts were then ordered to run concurrently to each other and the remaining counts were ordered merged for purposes of sentencing. Shindeldecker now appeals his conviction and sentence, raising four assignments of error for review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE FINDING OF GUILT ON ALL COUNTS WAS NOT SUPPORTED BY SUFFICIENT, CREDIBLE EVIDENCE AND WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} In his first assignment of error, Shindeldecker argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶ 14} At the outset, we note that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1987); *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 17. Nevertheless, although the two concepts are different, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. Therefore, "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 15} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.

- 4 -

*State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 34.  To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 16}  While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide."  *State v. Schuster*, 12th Dist. Clermont Nos. CA2015-05-040 and CA2015-05-041, 2015-Ohio-4818, ¶ 54.  Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal.  *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81.

{¶ 17}  In the present case, Shindeldecker challenges his convictions for six counts related to his involvement in the manufacture, assembly, and possession of methamphetamine.  In so doing, we note that there is no dispute in the record that the garage in the back of Shindeldecker's residence contained a methamphetamine lab.  There is also no dispute that Shindeldecker's children were present at his home while the methamphetamine lab was in operation, which is relevant to his conviction for endangering children.

{¶ 18}  Shindeldecker asserts that he had no knowledge that his jacket, or the "grenade shaped" wallet on his person contained methamphetamine.  Shindeldecker's denial of any knowledge that he possessed methamphetamine was a matter that the jury considered, and ultimately rejected.  Again, credibility determinations are primarily matters for

the trier of fact to decide. *Schuster* at ¶ 54. The evidence presented at trial supports the jury's determination that Shindeldecker had actual possession of the methamphetamine found on his person.

{¶ 19} Next, Shindeldecker argues the state failed to present evidence that he participated in or was observed in the manufacture of methamphetamine. However, we find there was ample testimony to support these convictions. The evidence established that Shindeldecker lived in a residence located on property with a garage housing an active methamphetamine lab. Shindeldecker had been in the garage on multiple occasions and his fingerprints were located on the instrumentalities used in the methamphetamine production. During his initial arrest, police officers located pseudoephedrine tablets in Shindeldecker's vehicle, which are used in the manufacture of methamphetamine. Furthermore, although he denied involvement in the methamphetamine operation, Shindeldecker acknowledged the existence of "some things" in the garage, but claimed to be unaware of the exact nature of the operation.

{¶ 20} There was ample testimony to support the jury's finding. *See, e.g., State v. Bowling*, 12th Dist. Butler No. CA2013-08-159, 2014-Ohio-1690; *State v. Wyatt*, 12th Dist. Preble No. CA2013-06-005, 2014-Ohio-3009. The jury heard all of the testimony, considered the evidence, and found the state's theory of the case and its witnesses credible. As the jury was in the best position to weigh the evidence and assess the credibility of the witnesses, we will not disturb its finding on appeal. Shindeldecker's convictions were supported by sufficient evidence and were not rendered against the manifest weight of the evidence. We overrule Shindeldecker's first assignment of error.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S REQUEST FOR NEW COUNSEL PRIOR TO TRIAL.

{¶ 23} In his second assignment of error, Shindeldecker argues the trial court erred by denying his request for new counsel prior to trial. "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *State v. Liso*, 12th Dist. Brown Nos. CA2013-11-013 and CA2013-11-016, 2014-Ohio-3549, ¶ 7, quoting *State v. Cowans*, 87 Ohio St.3d 68, 72 (1999). Examples of "good cause" include a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result. *State v. Bullock*, 12th Dist. Clermont No. CA2005-04-031, 2006-Ohio-598, ¶ 13.

{¶ 24} "The decision whether to substitute an appointed attorney for an indigent defendant is within the trial court's discretion." *State v. Bizzell*, 12th Dist. Clinton No. CA2006-04-015, 2007-Ohio-2160, ¶ 6. This court reviews a trial court's decision denying a defendant's request to substitute appointed counsel under an abuse of discretion standard. *State v. Hubbard*, 12th Dist. Warren No. CA2007-01-008, 2008-Ohio-2630, ¶ 5. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Liso* at ¶ 8.

{¶ 25} In this case, Shindeldecker alleged that his appointed counsel had "seemed uninterested in my defenses and [has] been unreachable throughout my case stating that it was her impression that I was going to retain another attorney." Shindeldecker's attorney also addressed this issue before the court, noting that Shindeldecker had perhaps attempted to retain new counsel and thought Shindeldecker "is disappointed with my impression of his options and how his case may resolve." In addressing Shindeldecker's concerns, the trial court stated:

> Well, it's not unusual that there's a difference of opinion between counsel and a defendant as to how the case should proceed. What I've heard doesn't convince me that the Defendant is entitled to a new attorney.

I have no reason to believe that if I appointed somebody else, a month down the road or two months, I'm not going to be in the same position that I am in right now.

There was an indication by Mr. Muenchenback, apparently that attempt to retain him fell though. That's not the Court's problem. The request is denied.

{¶ 26} After a thorough review of the record, we find no abuse of discretion in the trial court's decision denying Shindeldecker's request to have new counsel appointed for him. This matter had been pending for some time and Shindeldecker's request came 12 days prior to the final trial date, which had already been continued on two prior occasions. Moreover, just as the trial court found, differences of opinion are not unusual between a criminal defendant and counsel. *Bizzell*, 2007-Ohio-2160 at ¶ 9. Here, although there is some indication that there was a disagreement between Shindeldecker and his appointed counsel, there is nothing to suggest that the disagreement interfered with the preparation and presentation of a competent defense. Accordingly, we find the trial court did not abuse its discretion in denying Shindeldecker's request for new counsel. Shindeldecker's second assignment of error is overruled.

{¶ 27} Assignment of Error No. 3:

{¶ 28} THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTION TO ADMISSION OF THE CRUISER VIDEO.

{¶ 29} In his third assignment of error, Shindeldecker argues that the use of the cruiser cam video, which showed Shindeldecker's arrest and the arresting officer's discovery of methamphetamine, should have been excluded pursuant to Evid.R. 403(A).

{¶ 30} A trial court has broad discretion in the admission and exclusion of evidence. *State v. Birt*, 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 53. Therefore, a reviewing court will not disturb the ruling of the trial court as to the admissibility of relevant evidence unless an appellant can demonstrate both an abuse of discretion, and that he or

- 8 -

she was materially prejudiced. *State v. Eacholes*, 12th Dist. Butler No. CA2013-11-195, 2014-Ohio-3993, ¶ 17.

{¶ 31} Evid.R. 403(A) requires relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." For evidence to be excluded on this basis, "the probative value must be minimal and the prejudice great." *Birt* at ¶ 54. Unfavorable evidence is not equivalent to unfairly prejudicial evidence. *Id.*

{¶ 32} Based on our review, we find no error in the introduction of the cruiser cam video. The cruiser cam video depicts the search on Shindeldecker and the discovery of methamphetamine. After this discovery, the arresting officer warned Shindeldecker to turn over any additional methamphetamine prior to his conveyance to the county jail, as that could carry additional charges. The video was therefore useful, at least in part, in showing that Shindeldecker knowingly conveyed, or attempt to convey, drugs into a detention facility following his arrest. Although Shindeldecker complains that the video showing his arrest was highly prejudicial, we note there had already been ample testimony that Shindeldecker had been arrested and the arresting officer had discovered methamphetamine on his person. Moreover, we disagree with Shindeldecker's suggestion that a jury may be tempted to "infer guilt rather than presuming innocence" based on the admission of this video. The trial court, at multiple times, reminded the jury of the presumption of innocence and the burden of proof necessary to secure a criminal conviction. Therefore, we find no error in the use of the cruiser cam video and Shindeldecker's third assignment of error is overruled.

{¶ 33} Assignment of Error No. 4:

{¶ 34} THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO FIVE YEARS IN PRISON, CONSIDERING THE DEFENDANT'S LACK OF SIGNIFICANT CRIMINAL HISTORY.

{¶ 35} In his fourth assignment of error, Shindeldecker argues that his prison sentence is contrary to law. We find no merit to Shindeldecker's argument.

{¶ 36} This court reviews felony sentences pursuant to the standard of review set forth in R.C. 2953.08(G)(2) to determine whether the imposition of those sentences is clearly and convincingly contrary to law. *State v. Stamper*, 12th Dist. Butler No. CA2012-08-166, 2013-Ohio-5669, ¶ 9. A sentence is not clearly and convincingly contrary to law where the record supports the trial court's findings under R.C. 2929.14(C)(4) and where the trial court considers the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly applies postrelease control, and sentences appellant within the permissible statutory range. *Id.*

{¶ 37} In the present case, the trial court ordered concurrent prison sentences for illegal manufacture of drugs, endangering children, and illegal conveyance. The remaining counts were then merged for purposes of sentencing. With respect to Shindeldecker's conviction for illegal manufacture of drugs, a first-degree felony, he was subject to a prison term of 11 years, including a mandatory minimum of four years in prison. R.C. 2929.14 (A)(1); R.C. 2925.04(C)(3)(b). The counts for endangering children and illegal conveyance, both third-degree felonies, subjected Shindeldecker to additional time of nine months to three years in prison. R.C. 2929.14. Ultimately, the trial court sentenced Shindeldecker to a five-year prison term for the illegal manufacture of drugs.[1]

{¶ 38} After reviewing the record, we find Shindeldecker's sentence is not clearly and convincingly contrary to law. Shindeldecker's sentence was within the permissible statutory range and the record reflects the trial court considered all relevant seriousness and

---

1. The trial court imposed additional prison terms of three years for endangering children and illegal conveyance, but ordered that those terms be served concurrently with the sentence imposed for the illegal manufacturing of drugs.

recidivism factors set forth in R.C. 2929.11 and R.C. 2929.12. Although Shindeldecker argues that his sentence is inappropriate based on his lack of significant criminal history and the fact that his children were not harmed as a result of the methamphetamine lab, we note that even if we were to agree with him, those are but two of the considerations that a trial court may consider in entering its sentencing decision. *See, e.g., State v. Conn*, 12th Dist. Warren Nos. CA2014-04-059, CA2014-04-061, and CA2014-06-084, 2015-Ohio-1766, ¶ 25 (prison term not clearly and convincingly contrary to law despite criminal defendant's "prior spotless criminal record"). Here, the trial court's sentencing decision is supported by the record and not contrary to law. Therefore, Shindeldecker's fourth assignment of error is without merit and overruled.

{¶ 39} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.